# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GENE LEONARD BROWN,        )
                                          )
                 Petitioner,      )
                                            )
          vs.                    ) Civil Action No. 10-1713
                                          ) Magistrate Judge Maureen P. Kelly
MELVIN LOCKETT; and TOM CORBETT,   )
                                          )
               Respondents.   )

## MEMORANDUM OPINION

Gene Leonard Brown ("Petitioner"), represented by privately retained counsel, has filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (the "Petition"). In June 2001, a jury in the Allegheny County Court of Common Pleas found Petitioner guilty of first degree murder in the shooting death of an acquaintance of Petitioner by the name of Darryl Massie.[1] Petitioner is currently serving a sentence of life imprisonment without the possibility of parole.

Despite seeking leave to file an Amended Petition, ECF No. 16, even with leave granted, the three claims raised in the initial Petition and brief in support, are the ones that Petitioner, in the final analysis, relies upon. The first two issues are:

> 5.1 Mr. Brown was denied his Sixth Amendment right to effective assistance of counsel at trial because trial counsel failed to present medical records, police reports, and witness testimony regarding the prior incident where the victim, Mr. Massie, attempted to rob Mr. Brown at gunpoint and then injured Mr. Brown during the struggle for the gun, which Mr. Brown successfully wrestled away from Mr. Massie and gave to the police.

> 5.2 Mr. Brown was denied his Sixth Amendment right to effective assistance of counsel at trial because trial counsel failed to call character witnesses, the names of whom were provided to trial counsel prior to trial.

ECF No. 1 at 7 to 8. Because the state courts addressed these claims on the merits and because

---

[1] Mr. Darryl Massie is also referred to throughout portions of the record as "Pudge."

we do not find that Petitioner carried his burden to show that that state courts' disposition of these claims was either contrary to or an unreasonable application of then existing United States Supreme Court precedent nor constituted an unreasonable determination of the facts, we will deny the Petition.

Petitioner also raises a third ground for relief in the Memorandum in Support of the Petition for Writ of Habeas Corpus. He argues that even if the individual errors of trial counsel are found to have not prejudiced Petitioner then the cumulative errors of trial counsel prejudiced Petitioner within the meaning of Strickland. ECF No. 2 at 71 to 80. This issue was not presented to the state courts and so the state courts did not address it. Nevertheless, because the state courts found that there were no errors by counsel, then no errors could be aggregated in order to create cumulative prejudice. Accordingly, the Petition will be denied on this ground as well.

## I. PROCEDURAL AND FACTUAL HISTORY[2]

Following a July 31, 2000 shooting incident at the St. Clair Village housing project in the City of Pittsburgh, Petitioner was identified as the shooter in a photographic array by at least one of the witnesses.[3] Petitioner was arrested on September 24, 2000 and charged with criminal

---

[2] The following procedural history is taken mostly from Petitioner's Memorandum In Support of Petition for Writ of Habeas Corpus Under 28 U.S.S.C. [sic] §2254 (hereinafter "MOL"). ECF No. 2 at 7 to 9.

[3] State Court Record ("SCR"), Trial Transcript ("TT") June 5, 6, 7, 2001 at 217 to 218. This cited portion of the trial transcript is actually a recorded statement of the witness, Mr. Miller. The recorded statement was taken on the day of the murder and, later, played at the trial. TT at 195. Mr. Miller had, prior to the admission of his previously recorded statement, taken the stand in Petitioner's trial and testified differently than what he had said in the recording. Contrary to the recorded statement, Mr. Miller, on the stand, denied that he ever identified Petitioner as the shooter. Id., at 153 to 182. The previously recorded statement was admitted at Petitioner's trial as a prior inconsistent statement. TT at 207, lines 10 to 13. Prior inconsistent statements, admitted into evidence, are substantive evidence of the truth of the matter stated in such prior inconsistent statements under Pennsylvania law and are not solely intended for impeachment

homicide in the death of Mr. Massie.

A jury trial was conducted from June 4, 2001 to June 7, 2001, before the Honorable Donna Jo McDaniel. Petitioner was represented by Sidney Sokolsky, Esquire, who was privately retained. At the trial, Petitioner took the stand in his own defense, admitted to shooting at the victim, but only at his legs and according to Petitioner, the shots either did not strike the victim or could only have struck the victim in the legs, TT at 358 to 364, whereas the fatal shots were two shots to the chest area of the victim. The victim did not have any gunshot wounds to the legs.

More specifically, Petitioner testified that he was walking to his sister's house to go to a party for their mother. While doing so, he noticed a group of men sitting down. TT at 357. He recognized one of these men to be Mr. Massie, the man, who about ten days earlier was armed with a gun and attempted to rob Petitioner. According to Petitioner, Mr. Massie got up and began walking toward Petitioner. Id., at 357-58. Mr. Massie confronted Mr. Brown, and threatened: "What are you going to do now? Where is the police at now, you little bitch." As Mr. Massie was saying this, Petitioner testified that he saw Mr. Massie reach inside his clothes in his mid-section area under his shirt as if he were going to retrieve a gun. Id. According to Petitioner, he then got his own gun and shot at Mr. Massie, aiming at or near Mr. Massie's legs. At this point, gun shots were fired in the direction of Petitioner and Mr. Massie. Petitioner saw Phil Peterson across the street shooting a gun in Petitioner's direction. Id. Mr. Peterson testified that he was shooting in order to scare Petitioner away. TT at 64. Petitioner testified that he then dropped his gun, put his hands on his head to signal that he no longer had a gun, hoping that the gunfire would stop. TT 361, 382. But the gunfire continued and Petitioner ran away and while

---

purposes. See, e.g., Commonwealth v. Henckel, 938 A.2d 433 (Pa.Super. 2007).

doing so, he saw his cousin driving and shouted to his cousin to stop, got in the car and told his cousin what just occurred.  TT at 362-63.

On June 7, 2001, a jury convicted Petitioner of murder in the first degree - apparently not crediting Petitioner's version of the events and his claimed self-defense.  On June 20, 2001, the Court sentenced Mr. Brown to a mandatory term of life imprisonment, without the possibility of parole.

On June 21, 2001, the trial court appointed the Office of the Public Defender to represent Mr. Brown in his direct appeal.   On March 1, 2003, the Pennsylvania Superior Court affirmed the judgment of sentence. On May 30, 2003, the Superior Court denied Mr. Brown's Application for Reargument.  On February 17, 2004, the Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal.

On July 8, 2004, Mr. Brown filed a pro se Petition under the Post Conviction Relief Act ("PCRA").  On September 14, 2004, the PCRA court, the Honorable Donna Jo McDaniel appointed Richard Narvin, Esquire, of the Office of Conflict Counsel of Allegheny County to represent Mr. Brown in his PCRA Petition.

Almost two years later, on August 31, 2006, after several extensions of time were granted, PCRA counsel filed an amended petition. On December 27, 2006, the Commonwealth filed its answer to the petition for PCRA relief. On January 9, 2007, the PCRA court entered on the record a Notice of Intent to Dismiss the amended PCRA petition. On April 4, 2007, the PCRA court conducted a hearing on Mr. Brown's claims of ineffectiveness of trial counsel, Sidney Sokolsky, Esquire.   At the conclusion of the PCRA hearing, the court stated that it was going to deny the amended PCRA petition. See N.T. PCRA Hearing, 4/4/2007, at 47.

On February 14, 2008, the Disciplinary Board of the Supreme Court of Pennsylvania

wrote PCRA counsel, J. Richard Narvin, Esquire, advising him that Mr. Brown had filed a complaint against him complaining that Mr. Narvin had not sent Mr. Brown a transcript from the PCRA hearing nor, despite Mr. Brown's repeated attempts, had anyone from Mr. Narvin's office contacted him since the hearing.  ECF No. 2-3 at 30 (Disciplinary Board of the Supreme Court of PA, Letter dated 2/14/2008).  PCRA counsel did not file any motions on Mr. Brown's behalf, but instead, wrote Mr. Brown advising him to get a form from the prison law library and file a new PCRA petition indicating that he lost his right to appeal through no fault of his own.  ECF No. 2-3 at 31 to 32 (Office of Conflict Counsel, J. Richard Narvin, Esquire, letter dated 2/21/2008).

Immediately, on February 29, 2008, Mr. Brown filed a new PCRA petition to have his appellate rights reinstated.  On March 4, 2008, the PCRA court appointed new counsel, Scott Coffey, Esquire, to represent Mr. Brown in his appeal. On March 28, 2008, Attorney Coffey timely filed a notice of appeal to the Superior Court on Mr. Brown's behalf. On January 26, 2009, the PCRA court entered its Rule 1925(a) opinion.  On September 23, 2009, the Superior Court of Pennsylvania, relying solely on the PCRA court's opinion, affirmed the PCRA court's decision.  ECF No. 2-2 at 14 ("We conclude that the PCRA court's opinion aptly analyzes each of Appellant's issues.  Accordingly, we affirm the order based on the PCRA court's well-reasoned opinion.").  Finally, on April 5, 2010, the Supreme Court of Pennsylvania denied Mr. Brown's Petition for Allowance of Appeal.

Petitioner, through counsel then filed the Petition, ECF No. 1, and an extensive Memorandum of Law in Support of Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254.  ECF No. 2.  Respondents filed an Answer along with an appendix of exhibits.  ECF No. 10.  Respondents also caused the original state court record to be transmitted to the Clerk's Office.  Petitioner filed a Reply to the Commonwealth's Answer to the Petition for Writ of Habeas

Corpus (hereinafter the "Traverse"). ECF No. 13.

In June 2012, Petitioner, through counsel, sought leave to amend the Petition based upon the recently decided case of <u>Martinez v. Ryan</u>, __ U.S. __, 132 S.Ct. 1309 (2012). In the <u>Martinez</u> case, the United States Supreme Court changed the prior rule that ineffective assistance of PCRA trial counsel could not serve as "cause" to excuse a procedural default of claims of trial counsel's ineffectiveness. Accordingly, Petitioner sought to amend his Petition to include claims of trial counsel's ineffectiveness that had hitherto been considered procedurally defaulted because PCRA trial counsel failed to raise those claims. More specifically, Petitioner sought to add claims that trial counsel was ineffective for failing to call five more character witnesses in addition to the already existing claim that trial counsel was ineffective for failing to call two other character witnesses. ECF No. 16-2 at 1 to 2. Petitioner also sought to add a claim that trial counsel was ineffective for failing to object to the admission of hearsay testimony, based not only on state evidentiary law of hearsay, but also based upon Petitioner's Sixth Amendment right to confront witnesses, and relatedly, to add a claim that trial counsel was ineffective for failing to move the trial court to make appropriate on-the-record findings with regard to the hearsay exceptions. <u>Id.</u>, at 2 to 3. Lastly, Petitioner sought to include in his original claim of cumulative error of trial counsel, these new additional claims of trial counsel's alleged errors asserted in the proposed Amended Petition as having prejudiced Petitioner when considered in their cumulative effect. <u>Id.</u>, at 3 to 4.

The Court ordered Respondents to file a Response to the Petitioner's Motion for Leave to File an Amended Petition. ECF No. 18. The Respondents filed a Response, ECF No. 21, and, while not appearing to oppose the request for leave to file an Amended Petition, argued that the issues sought to be raised were meritless.

Petitioner then, through counsel, filed a Reply to the Respondents' Response, ECF No. 24, and a Brief in Support. ECF No. 25. In that Reply and Brief, Petitioner essentially withdrew all of the proposed amended claims and sought only to have the Court consider the three claims that were raised in the original Petition and MOL in light of <u>Martinez v. Ryan</u>. <u>See</u>, <u>e.g.</u>, ECF No. 24 at 2 ("Mr. Brown respectfully withdraws that portion of Proposed Amendment Number Two which requests the addition of five witnesses' names to this issue."); <u>id</u>., at 3 ("Mr. Brown respectfully withdraws Proposed Amendments Numbers Three and Four [i.e., claims of trial counsel's ineffectiveness with regard to the alleged hearsay statement and Sixth Amendment confrontation clause claims]. After substantial research into the merits of these two issues, Mr. Brown believes that these issues are not meritorious. Mr. Brown further believes that these issues individually or cumulatively are not necessary to prevail in his case."); <u>id</u>. at 3 to 4 ("Because no amendments in the form of new habeas claims exist, there no longer exists the need to amend habeas claim number three which relates to the cumulative effective [sic] of the errors caused by trial counsel's ineffective assistance."). Accordingly, the only claims actually being raised herein are the two claims that were originally raised in the original Petition and the third claim of cumulative prejudice that was raised in the MOL. ECF No. 2 at 71 to 80. The only difference really is Petitioner's request that we review all of these claims in light of <u>Martinez v. Ryan</u>, which we shall do. <u>See</u>, <u>e.g.</u>, ECF No. 25 at 4 ("Although the wording of the first habeas issue remains the same, Mr. Brown provides additional legal argumentation under <u>Martinez</u> as additional support for this Court to review the merits of this claim. . ."); <u>id</u>., at 14 ("Although the wording of the second habeas issue remains the same, Mr. Brown provides additional legal argumentation under <u>Martinez</u> as additional support for this Court to review the merits of this claim . . .").

All parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 12, 14. The case was subsequently reassigned to the undersigned. ECF No. 15.

## II. LEGAL STANDARDS APPLICABLE TO SECTION 2254 PETITIONS

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas petition was filed after its effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. §2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.  The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law.  See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.  Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision.  Williams, 529 U.S. at 412;  Renico v. Lett, 130 S.Ct. 1855, 1866 (2010).   In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of United States Supreme Court precedent was objectively unreasonable.  Matteo, 171 F.3d at 890.

AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(2).

## III. DISCUSSION

As should have been made clear in the recitation of the procedural history of this case, there are three major issues Petitioner raises: 1) trial counsel was ineffective for failing to introduce evidence (in addition to Petitioner's own testimony) of the attempted armed robbery of Petitioner by the murder victim which occurred roughly ten days prior to the murder; 2) trial

counsel was ineffective for failing to call two specific character witnesses; and 3) the cumulative effect of trial counsel's errors, even if, when considered individually, were not sufficient to prejudice Petitioner, were sufficient to prejudice Petitioner when considered cumulatively.

### A. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO INTRODUCE EVIDENCE OF THE ROBBERY BY THE VICTIM.

Petitioner claims that his trial counsel was ineffective for failing to introduce evidence of the fact that the victim attempted to rob Petitioner ten days prior to the murder.

According to Petitioner, the attempted robbery occurred on July 21, 2000, at around 11p.m., after Petitioner and a female friend left a bar. As they entered their car, Mr. Massie, the murder victim, approached Petitioner's side of the car with a gun in his hand and while waving the gun in Petitioner's face, told Petitioner to get out of the car. Petitioner knew the attempted robber as "Pudge," a panhandler in the neighborhood.

As Petitioner exited the vehicle in compliance with Mr. Massie's instructions, Petitioner rushed Mr. Massie, and they struggled for the gun for about 5 to 10 minutes. During the struggle, Mr. Massie severely bit Petitioner's hand and almost shot Petitioner with the gun.

As the struggle continued, Petitioner's female friend exited the vehicle and used her cell phone to call the police. The dispatcher told Petitioner's friend an officer would be sent. Petitioner's friend then noticed a police car, with an officer sitting in it, and ran to the car and told the officer what was happening. By the time the officer came to the scene, Petitioner had wrestled the gun away from Mr. Massie, who had run away from the scene. Petitioner gave the police a report of what transpired and the police told Petitioner to get his hand checked. Petitioner went to a hospital and had the bite on his hand treated.

Ten days later, on July 31, 2000, Petitioner's shooting of Mr. Massie occurred.

At his trial, Petitioner took the stand and testified about the attempted armed robbery by

Mr. Massie on July 21, 2000. Hence, the jury had before them evidence of the predecessor incident. The significance of the attempted robbery, according to Petitioner, was to bolster Petitioner's theory of the case, namely, that he was engaged in self-defense at the time he shot the victim. ECF No. 2 at 16.

Petitioner claims now that trial counsel was ineffective for failing to introduce additional corroborative evidence from the night of July 21, 2000, when Mr. Massie attempted to rob Petitioner. Specifically, Petitioner complains that his trial counsel was ineffective for failing to introduce 1) the medical records from the hospital treatment of Petitioner's hand bite; 2) the police reports from that night; and 3) the testimony of Petitioner's female friend as to what transpired that night (collectively "the cumulative evidence"). ECF No. 2 at 2.

### 1. The Adjudication of This Claim by the State Courts

The PCRA trial court addressed this claim of counsel's ineffectiveness on the merits and rejected it, reasoning as follows:

> Next, the Defendant argues that trial counsel was ineffective for failing to present medical records and a police report from a skirmish between Pudge and the Defendant a week before the shooting. This claim is meritless.
>
> Pennsylvania law is clear that in order to make out a claim of self-defense, "it must be shown that (a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; (b) the actor reasonably believed that he was in imminent danger of death or serious bodily injury and that there was a necessity to use such force in order save himself or others; and (c) the actor did not violate the duty to retreat or avoid the danger." Commonwealth v. Harris, 703 A.2d 44, 441 (Pa. 1997). The Commonwealth may defeat a claim of self-defense by showing that "'(1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked the use of deadly force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety.'" Commonwealth v. Yanoff, 690 A.2d 260, 264 (Pa.Super. 1997) "A jury is not required to believe the testimony of a defendant who asserts [such a] claim [of self defense]."
>
> As noted above, eyewitness Daron Freeman testified that the Defendant pulled his gun on the unarmed victim and shot him in the chest. The Defendant himself admitted to pulling his gun and shooting at Pudge while standing in the public street, rather than running away and avoiding Pudge altogether, even

though there was nothing to stop him from doing so. Given this testimony, the Defendant has not only failed to prove that he was not the aggressor, but he has also failed to prove that he did not violate his duty to retreat.

At trial, the Defendant also testified that he and Pudge were involved in an altercation outside a Mt. Oliver bar about a week before the incident. The Defendant testified that Pudge attempted to rob him at gunpoint, but the Defendant fought him and grabbed the gun and Pudge ran off when he heard the police coming. Mrs. Brown testified that she obtained the police report from the incident as well as the Defendant's hospital records showing injuries received in the incident, and gave those to Mr. Sokolsky [i.e., Petitioner's trial counsel] prior to trial.

There is no viable argument that the introduction of these records would have changed the outcome of the trial. Although the District Attorney did cross-examine the Defendant regarding this incident and in his closing argument did question whether it even occurred, the records and report had no bearing on the shooting in question or the Defendant's claim of self-defense. The records could not contradict Mr. Freeman's eyewitness testimony that the Defendant drew his gun and shot the unarmed victim without provocation, nor did they have any bearing on the Defendant's failure to retreat if indeed Pudge was verbally threatening him. In short, the records prove nothing, other than the occurrence of an incident a week before, wherein the Defendant fought with Pudge and won. If anything, the records demonstrate that the Defendant had no reason to be afraid of Pudge — since the Defendant had already proven his ability to physically overpower Pudge — even if Pudge was holding a gun on the Defendant. Under the circumstances, counsel's failure to use the police and hospital records was a strategic decision for which there existed a reasonable basis. As such counsel was not ineffective for failing to introduce them and this Court did not err in denying the Defendant's claim in this regard.

ECF No. 2-2 at 6 to 8.

In disposing of these ineffective assistance claims, the state courts relied upon the test definitively announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, there is a reasonable probability that the outcome of the proceedings would have been different.

<u>Commonwealth v. Pierce</u>, 527 A.2d at 975.[4]  This standard has been found to be materially

identical to the test enunciated in <u>Strickland</u>.  <u>See</u> <u>Werts</u>, 228 F.3d at 203.  The United States

Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" <u>Strickland</u>,

and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of

<u>Strickland</u> to [petitioner's] ineffectiveness claim was objectively unreasonable, *i.e.*, the State

court decision, evaluated objectively and on the merits, resulted in an outcome that cannot

reasonably be justified under <u>Strickland</u>." <u>Werts</u>, 228 F.3d at 204.  In any event, Petitioner

concedes that the test for ineffective assistance of counsel under <u>Strickland</u> is the same as the test

for ineffectiveness under Pennsylvania state law.  ECF No.  13 at 2 ("In Pennsylvania, the

standards for adjudicating state and federal ineffective assistance of counsel claims are

identical.").

     As noted previously, there are two ways in which a state court decision can be contrary to

then-existing United States Supreme Court precedent:  1) for the state courts to apply a wrong

rule of law; 2) for the state courts to reach a result in a case opposite to the result reached by the

United States Supreme Court where the material facts are the same.  Pursuant to <u>Werts</u>, and

Petitioner's concession, we know that the state courts' disposition of Petitioner's ineffectiveness

claims was not contrary to United States Supreme Court precedent in the sense that the state

courts' decision applied a wrong rule of law, <u>i.e.</u>, the standard of ineffectiveness under state law

is the same as under federal law.  However, it remains open to Petitioner to show that the state

courts decided his case differently than the United States Supreme Court has in a case with a set

of materially indistinguishable facts.  <u>Williams</u>, 529 U.S. at 412-13.

     Petitioner has not argued and does not point to any United States Supreme Court

---

[4]  The PCRA trial court cited <u>Commonwealth v. Rega</u>, 933 A.2d 1007, 1018-1019 (Pa. 2007) for
the Pennsylvania state law test of ineffectiveness.  ECF No. 2-2 at 4.

decision, in existence at the time that the state courts rendered their decisions in this case that has

a set of facts that are materially indistinguishable from Petitioner's case where the outcome was

different from the outcome reached by the state courts herein.  Williams, 529 U.S. at 412

(analyzing whether a state court decision is "contrary to" Supreme Court precedent requires

analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the

relevant state court decision.").  Hence, Petitioner has failed to carry his burden to show that the

state courts' disposition was contrary to United States Supreme Court precedent.  However, it

remains open to Petitioner to establish that the state courts' disposition was an unreasonable

application of federal law.  Petitioner has not carried that burden.

### 2. Petitioner Has Not Carried His Burden To Show That The State Courts' Adjudication Was Unreasonable.

#### a. The PCRA court did not rule that the evidence was cumulative, but instead ruled that the evidence was irrelevant.

The first argument Petitioner makes is that the PCRA trial court erred in reasoning that

the cumulative evidence was, in fact, cumulative instead of being corroborative of Petitioner's

testimony on the stand.  ECF No. 2 at 21 to 23.  However, from the quoted portion of the PCRA

trial court's opinion, it is apparent that the PCRA trial court did not, in its opinion, justify the

denial of PCRA relief on the basis that the cumulative evidence was cumulative.  Rather, the

PCRA trial court, in its opinion, held that the cumulative evidence was irrelevant to the crucial

issue of whether Petitioner successfully mounted his self-defense.  PCRA trial court Opinion,

ECF No. 2-2 at 7 ("the records and report had no bearing on the shooting in question or the

Defendant's claim of self-defense").  While it is true that the PCRA trial court during the PCRA

hearing stated that the cumulative evidence was cumulative, the PCRA trial court did not include

that rationale in the opinion rejecting Petitioner's claim of trial counsel's ineffectiveness.  See

SCR Notes of Testimony ("N.T."), April 4, 2007, at 44 ("I – the Court is going to rule that it [i.e., the cumulative evidence] is cumulative, and further, that the defendant did not make out the other elements of self-defense.").  However, the PCRA trial court did not utilize this rationale in its opinion explaining its ultimate denial of relief.  Because this rationale was not present in the PCRA trial court's opinion and because the Superior Court's opinion affirming the PCRA trial court, affirmed on the basis of the PCRA trial court's opinion, we find that the rationale concerning the evidence being cumulative was not a rationale ultimately provided by the state courts and, accordingly, we conclude is not a basis upon which this Court can determine whether the state courts' disposition was an unreasonable application of then-existing United States Supreme Court precedent.  We do so for two independent reasons.

One of the independent reasons is a state law reason.  Namely, the state law rule apparently is that where there is a difference in an oral pronouncement by a court and a written opinion/judgment by a court, the written judgment controls.  See, e.g., Commonwealth. v. Gordon, 897 A.2d 504 (Pa.Super., 2006) (where there is a discrepancy between the sentence as written and as orally pronounced, the pronounced sentence as recorded on the indictments always controls);  Commonwealth  v. Quinlan, 639 A.2d 1235 (Pa.Super., 1994) (oral statements made by judge in passing sentence, but not incorporated in written sentence signed by sentencing judge, are not part of judgment of sentence).  In light of comity considerations, this Court should not undermine this state law rule by not giving it effect.

The second independent reason is a federal law reason under AEDPA.  As the courts have explained, "[i]n considering a section 2254 petition, 'we review the 'last reasoned decision' of the state courts on the petitioner's claims.' *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (*quoting Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). That would be the superior

court's unpublished opinions." <u>Soto-Echevarria v. Wenerowicz</u>, NO. 1:10-CV-1313, 2012 WL 194077, at *3 (M.D.Pa., Jan. 23, 2012). Instantly, the last reasoned decision in Petitioner's case is the Superior Court's opinion dated September 23, 2009 which incorporated the PCRA trial court's opinion, which did not rely upon the cumulative evidence rationale. Hence, this issue of the allegedly erroneous finding that the evidence was cumulative does not provide a ground for relief under AEDPA because the allegedly erroneous finding was not one on which the state courts relied to dispose of Petitioner's claimed ineffectiveness of his trial counsel for failing to introduce the cumulative evidence.

### b. The PCRA court did not make inconsistent findings of fact.

The next claim Petitioner makes is that the PCRA courts unreasonably determined the facts because the PCRA trial court judge who was also the judge that presided over Petitioner's criminal trial made inconsistent findings in the trial versus during the PCRA proceedings. ECF No. 2 at 24 to 32. Petitioner argues that it was inconsistent for the PCRA court to find in the PCRA proceedings that Petitioner failed to show by means of the cumulative evidence that he acted in self-defense (under state law given that he appeared to have violated his duty to retreat and/or given that he appeared to be the aggressor on the date of the shooting) and then for that same judge to have found at the trial that there was sufficient evidence for the court to charge on self-defense and for the jury to consider self-defense. We are not persuaded.

There is no inconsistency. In fact, because the cumulative evidence was not proffered nor introduced at trial, the trial court made no determination regarding that specific evidence and so any determination at the PCRA proceeding regarding the cumulative evidence and its significance could not be inconsistent with the trial court's non-existent ruling concerning the cumulative evidence. To the extent that Petitioner would argue that the PCRA court's treatment

of the cumulative evidence is inconsistent with the trial court's treatment of Petitioner's testimony regarding the attempted robbery of Petitioner by the murder victim, we are not convinced. We do not know precisely which evidence the trial court relied upon to find there to be sufficient evidence of self-defense, it might have been solely Petitioner's testimony that he was acting in self-defense at the time of the shooting, quite apart from any testimony by Petitioner regarding the robbery. Given that the record is not clear on this, Petitioner simply cannot sustain his burden to show that the PCRA trial court's determination was unreasonable because it was allegedly inconsistent with the trial court's prior finding of sufficient evidence of a self-defense theory. [5]

Alternatively, we find no inconsistency in the treatment of the evidence. At trial, the trial court simply concluded that in light of all of the evidence offered by Petitioner, if it was believed by the jury, there was sufficient evidence to merit a self-defense instruction. After the PCRA hearing, the PCRA court concluded that some of the evidence, which was not offered at trial, namely, the cumulative evidence, simply was not relevant to the critical issue of Petitioner's failure to establish his self-defense. Put another way, the PCRA court determined that the cumulative evidence of the victim's attempted robbery of Petitioner, occurring roughly one week prior to the murder, was simply irrelevant to Petitioner's abject failure to establish he acted in self-defense, i.e., irrelevant to Petitioner's failure to establish that he could not have retreated

---

[5] Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. *Parke*, 506 U.S. at __, 113 S.Ct. at 520; *Henderson*, 426 U.S. at 647, 96 S.Ct. at 2258. . . . His [i.e., the habeas petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F.Supp. 1278, 1284 n.6 (W.D.N.Y. 1978) ("In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, No. CIV.A. 3:98-CV-2291-P, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding.").

with complete safety.  Petitioner has not persuaded us that there is any logical inconsistency.

### c.  The PCRA court did not err in its analysis of Petitioner's claims of ineffectiveness of counsel.

Petitioner also complains that the PCRA court erred or acted unreasonably when it failed to include in its analysis of the prejudice prong of the test for ineffectiveness of counsel the fact that a possible outcome of this case could have been that the jury found Petitioner guilty of a lesser degree of homicide such as voluntary manslaughter also called imperfect self-defense or the jury could have found him guilty of involuntary manslaughter or third degree murder.  We are not persuaded.

First, we do not find it unreasonable when no such argument was made to the PCRA trial court in the amended PCRA petition.  <u>See</u> ECF No. 10-5 at 25, ¶ b.  Petitioner did not argue in the amended PCRA petition that he was prejudiced by counsel's performance, based on the contention that had the cumulative evidence been produced, there was a reasonable probability that Petitioner would have been found guilty of a lesser degree of murder rather than first degree murder.  Petitioner also failed to raise any such argument in the brief on appeal to the Pennsylvania Superior Court.  ECF No. 10-6 at 30 to 31.  Rather, Petitioner solely argued in the amended PCRA petition that had the cumulative evidence been introduced, Petitioner would have been found not guilty of first degree murder because he was engaged in self-defense.  ECF No. 10-5 at 25 (arguing only that the medical report of Petitioner's treatment "would have demonstrated that the victim was the aggressor [on the night of the shooting] and substantiated the defendant's self defense claim" and arguing that the police report of the attempted robbery would have shown that "the deceased had a revenge motive and this also would have supported defendant's self defense claim.").  As such we do not find the PCRA trial court's failure to consider this issue, which was never presented to the PCRA court, unreasonable within the

meaning of AEDPA.

In the alternative, even this Court were to review this issue de novo, the issue would not merit relief.

Petitioner's argument is that the cumulative evidence would have supported the fact that the victim, Mr. Massie, was violent (evidence already of record by Petitioner's own testimony regarding the attempted robbery) and that given Mr. Massie's violent nature, Petitioner unreasonably believed that deadly force was necessary. Petitioner points out that the trial court judge gave the jury an instruction on voluntary manslaughter, which meant that the trial judge found there to be sufficient evidence in the record to permit the jury to consider voluntary manslaughter as a possible verdict. Under Pennsylvania law, a person "who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title but his belief is unreasonable." 18 Pa.C.S. § 2503(b).

The reference to "Chapter 5 of this title" refers to 18 Pa.C.S. § 505 which, at the time of the shooting, provided in relevant part that

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> > "(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:
> >
> > > (A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be . . . .

Given that the jury had before it the evidence of Mr. Massie's propensity for violence, in the form of the testimony of the Petitioner, and given that the jury had before it the choice of finding Petitioner guilty of voluntary manslaughter (as they had received an instruction on such a possible verdict), and given that the shooting took place in a public street where the state courts reasonably found that Petitioner was able to retreat, we fail to be convinced that had the cumulative evidence been introduced there was a reasonable probability that the outcome would have been different, i.e., that Petitioner would have been found guilty of voluntary manslaughter. This is because the evidence is uncontradicted that Petitioner could have retreated with complete safety just as he retreated when Mr. Peterson started to shoot at him.  SCR TT at 357 to 363.  The PCRA court specifically found that Petitioner failed to carry his burden to establish this element of self-defense.  Could an argument be made that Petitioner unreasonably believed he could not have retreated with complete safety from the victim?  The answer to this question is, yes, but in light of Petitioner's hasty retreat from Mr. Peterson, we are not convinced by such an argument. In light of this record, Petitioner fails to show that the PCRA court's disposition of his ineffectiveness claims was an unreasonable application of Strickland.

**d. The state courts did not unreasonably determine the facts.**

Nor do we find any of the state courts' factual determinations to be unreasonable as Petitioner contends.  Petitioner asserts that the state courts' finding that Petitioner was the aggressor was unreasonable because the state courts found that Daron Freeman's testimony supported the fact that Petitioner shot Mr. Massie in the chest.   Petitioner contends this because he says Freeman did not see Petitioner shoot Mr. Massie in the chest.  Petitioner is technically correct in that Mr. Freeman was not an eyewitness as much as an "ear witness."  Mr. Freeman testified that when he saw Petitioner coming towards him and Mr. Massie, he told Mr. Massie

that Petitioner was coming. Mr. Freeman testified that he, i.e., Mr. Freeman had turned to walk away after telling Mr. Massie this, and that as he, i.e., Freeman, was walking away, he heard two shots, turned around, saw Mr. Massie clutch his chest and saw Petitioner with a gun. Viewing this evidence in a light most favorable to the Commonwealth and resolving all ambiguities in the record against Petitioner,[6] the evidence permits an inference that Petitioner did shoot Mr. Massie in the chest (even if Mr. Freeman did not see the actual shooting) at a time when Petitioner was approaching Mr. Massie and at a time when Petitioner could have turned around and avoided Mr. Massie.

Petitioner also argues that he presented evidence that shows he believed that he could not retreat with complete safety. ECF No. 2 at 29 to 30. However, Petitioner's position depends upon the idea that upon seeing Mr. Massie, he could not have avoided the confrontation, a position that is unsupported by the record and that was apparently rejected, not unreasonably, by the PCRA court. Petitioner now contends that he was absolutely frightened of Mr. Massie, given the prior robbery attempt. However, Petitioner's failure to explain before the PCRA court or this Court why, upon seeing Mr. Massie, Petitioner did not change his route or turn around and flee, utterly fails to carry his burden to show that the state courts' determination that Petitioner violated his duty to retreat was unreasonable.

Next Petitioner contends that the state courts unreasonably determined that Petitioner could not have been that fearful of Mr. Massie given that Petitioner, while unarmed, was able to attack Mr. Massie on the night of the robbery, subdue Mr. Massie, and even take the gun away from Mr. Massie. ECF No. 2 at 31. Petitioner does not even show that the state courts'

---

[6] Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993); Robinson v. Smith, 451 F.Supp. 1278, 1284 n.6 (W.D.N.Y. 1978); Patrick v. Johnson, No. CIV.A. 3:98-CV-2291-P, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding.").

determination in this regard was erroneous. However, even if erroneous, such a conclusion does not strike this Court as unreasonable. Cf. Wong v. Smith, 131 S.Ct. 10, 11 (2010) ("An 'unreasonable application' of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one."). It is not unreasonable to conclude that because Petitioner beat the person once, Petitioner could do so again and therefore, need not fear that person.

Accordingly, Petitioner has not carried his burden before this Court to demonstrate that the state courts' determination that Petitioner was not prejudiced by counsel's failure to introduce the cumulative evidence to have been unreasonable.

### e. The PCRA court did not apply an incorrect standard.

Petitioner next complains that the PCRA court used the wrong standard when it stated that "[t]here is no viable argument that the introduction of these records [i.e., the cumulative evidence] would have changed the outcome of the trial." ECF No. 2 at 36. Petitioner contends that the Strickland standard merely requires a "reasonable probability" that the outcome of the proceeding would have been different and not that the outcome necessarily would have been different. We are not persuaded.

First, we note that the PCRA trial court invoked the correct standard when it announced the standard to be applied to ineffective assistance of counsel claims. ECF No. 2-2 at 4 ("there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different"). Second, what the Court said, when rejecting a similar argument, in Steele v. Beard, 830 F.Supp.2d 49, 72 n.13 (W.D.Pa., 2011) applies equally here:

> At some places in Steele II, the Pennsylvania Supreme Court stated that Steele was not prejudiced because he failed to demonstrate that counsel's alleged ineffectiveness "would have" produced a different outcome. Strickland and Pierce require that the petitioner demonstrate a "reasonable probability" of a different outcome. The U.S. Supreme Court has counseled that a federal habeas court should not be quick to assume that the state court applied the wrong law,

even if the state court was imprecise in language it used in evaluating a claim. Woodford v. Visciotti, 537 U.S. 19, 23-24 (2002) (per curiam) (finding the Court of Appeals for the Ninth Circuit's "readiness to attribute error [to the state court] is inconsistent with the presumption that state courts know and follow the law," and is "also incompatible with § 2254(d)'s 'highly deferential standard for evaluating state-court rulings,' which demands that state court decisions be given the benefit of the doubt."); see also Williams v. Beard, 637 F.3d 195, 233 n.30 (3d Cir. 2011).   In Visciotti, the Supreme Court admitted that even it has stated imprecisely Strickland's prejudice standard at points in some of its decisions, and noted that the California Supreme Court's shorthand reference to the Strickland standard that was not entirely accurate "can no more be considered a repudiation of the standard than can this Court's own occasional indulgence in the same imprecision." 537 U.S. at 24 (citing Mickens v. Taylor, 535 U.S. 162, 166 (2002); Williams, 529 U.S. at 393).

The state courts here did not apply an ineffectiveness standard that was contrary to or an unreasonable application of then-existing United States Supreme Court precedent.   We read the language of the PCRA trial court challenged by Petitioner to be merely a short hand way of saying there was no reasonable probability that the outcome would have been different  had the cumulative evidence been introduced at trial.   Accordingly, this issue does not merit relief.

### f.   The cumulative evidence was irrelevant to the question of whether Petitioner could retreat or not.

Petitioner also complains that the PCRA court found the cumulative evidence irrelevant to Petitioner's claim of self-defense.  Petitioner contends that such evidence would be relevant to Petitioner's self-defense suggesting that it was relevant to Petitioner's state of mind.  While the cumulative evidence might have some relevance to Petitioner's state of mind vis-a-vis fear of Mr. Massie, we fail to see how Petitioner's fear of Mr. Massie is relevant to Petitioner's ability to retreat or not.  The simple fact of the matter is, irrespective of his fear, Petitioner either could retreat or could not retreat.  The state courts found that he could retreat and accordingly, his defense of self-defense necessarily failed.  So while Petitioner's fear of Mr. Massie might have some relevance to some aspects of a self-defense defense, it is not clear that his fear would have

relevance to the question of whether he had the ability to retreat. The state courts found such cumulative evidence of Petitioner's fear irrelevant to the defense of self-defense under Pennsylvania state law, and we are not permitted to review such questions of state law. Williams v. Chrans, 945 F.2d 926, 956 (7th Cir. 1991) ("A habeas petitioner cannot challenge a state court's construction of state law."). Even if we were to review the issue of relevance, if Petitioner were in such fear of Mr. Massie, it would seem incongruous that he would not retreat or flee upon sighting Mr. Massie.[7] Accordingly, the state courts' determination that the cumulative evidence was irrelevant to Petitioner's failure to establish self-defense was not unreasonable. Even if the state courts' construction of state law were however unreasonable, such an unreasonable construction of state law could not provide a ground for relief here in federal habeas proceedings. As relevant here, the dispositive question under Pennsylvania state law for self-defense is: did the killer violate a duty to retreat. Petitioner's fear of Mr. Massie would seem to have little to do with whether Petitioner had the ability to retreat or not, and, if anything, would appear to provide even a greater incentive to retreat. Thus, we reject Petitioner's contention that "with the addition of the omitted evidence into the record, there is a reasonable probability that a jury would find that Mr. Brown reasonably believed that he could not retreat with complete safety." ECF No. 2 at 40. See also ECF No. 2 at 64 to 65. At the very least, he has not carried his burden to show that the state courts' disposition of this claim (i.e., in concluding that the cumulative evidence was irrelevant to Petitioner's self–defense theory) was unreasonable.

---

[7] We are not unaware of the common expression "frozen with fear." However, the evidence of record does not support that Petitioner was frozen with fear, if anything, he was quite able to continue to advance toward Mr. Massie after sighting him, pull out a gun and shoot, according to Petitioner, at Mr. Massie's legs. SCR TT at 357 to 358 ("when I was walking up, Darryl [Massie, the victim,] had got up. He walked over to me and asked me . . . .").

### B. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CALL CHARACTER WITNESSES OF WHOM HE DID NOT KNOW.

Petitioner's second major claim is that his trial counsel was ineffective for failing to call two character witnesses, namely, Jada Cunningham, a friend of Petitioner and Latrice Brown, Petitioner's sister.

The PCRA trial court held an evidentiary hearing at which both Latice Brown and Jada Cunningham testified as to Petitioner's good reputation in the community for being peaceful and non-violent.

The PCRA trial court rejected this claim of ineffectiveness and reasoned as follows:

> As it pertains to the failure to call witnesses, in order to establish counsel's ineffectiveness, the Defendant "must establish that (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." Id. There can be no finding of ineffectiveness for a failure to call a particular witness "without some showing that the absent witness' testimony would have been beneficial and helpful in establishing the asserted defense." Commonwealth v. Chmiel, 889 A.2d 501, 546 (Pa. 2005).
>
> Initially, we note that Defendant has not established counsel's knowledge of Ms. Brown's and Ms. Cunningham's existence or their potential character testimony. At trial, a sidebar discussion was held after the Defendant's testimony, during which trial counsel indicated that he had discussed the matter of character witnesses with the Defendant but that the Defendant "could not supply [him] any at this point in time." (Trial Transcript, p. 385). At the evidentiary hearing, Joan Brown (the Defendant's mother) testified that she gave Mr. Sokolsky the names of several character witnesses, but Mr. Sokolsky did not have any recollection of this. (E.H.T. , p 34). Given Mr. Sokolsky's on-the-record statement at trial five years prior, and Mrs. Brown's obvious interest in seeing her son freed, this Court resolved the issue of credibility in Mr. Sokolsky's favor. (E.H.T. p. 46-7).

ECF No. 2-2 at 5 to 6. This decision is clearly not contrary to United States Supreme Court precedent existing at the time of the state courts' decisions, as the test utilized by the state courts for determining ineffectiveness based on failure to call a witness is the same test used by the

Federal Courts. See, e.g., Armstead v. Colleran, No. 02-CV-1216, 2003 WL 22436232, at *9 (E.D. Pa., Oct. 24, 2003)("To prove that counsel was ineffective for failing to call a witness, then, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner of a fair trial.")(citing in support Blasi v. Attorney General of the Commonwealth of Pennsylvania, 120 F.Supp.2d 451, 474 (M.D.Pa. 2000), aff'd, 275 F.3d 33 (3d Cir. 2001), cert. denied, 122 S.Ct. 1540 (2002)); Fithian v. Shannon, No. CIV.A. 02-1861, 2002 WL 1636004, at *4 (E.D.Pa. July 23, 2002)(finding that the Superior Court's application of the test of ineffectiveness for failure to call a witness, which was used in Commonwealth v. Crawley, the very test used by the PCRA court herein, was "neither contrary to nor an unreasonable application of federal law").

**1. The Petitioner has not carried his burden to show that the State Courts' adjudication of this claim was unreasonable.**

Petitioner does contend that the state court's disposition of this issue involved an unreasonable determination of the facts. ECF No. 2 at 48 to 54. Critical to Petitioner showing that the PCRA court acted unreasonably is establishing that the PCRA court's credibility determinations were unreasonable, insofar as the PCRA court found the statement of Petitioner's trial counsel at trial that Petitioner did not provide him any character witness's names to be more credible than the testimony of Petitioner's mother at the PCRA hearing that she in fact provided the names of several character witnesses to trial counsel. Petitioner acknowledges such when he argues that "[a]lthough the resolution of this issue requires a review of a state-court credibility determination, Mr. Brown submits that this Court has the authority to do so[.]" ECF No. 2 at 48 to 49 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) for the proposition that a "federal

court can disagree with a state court's credibility determination").

While it is true that a federal habeas court has the ability to disagree with a state court's credibility determination, a federal court should do so only where the habeas Petitioner has overcome the state courts' credibility determination by clear and convincing evidence. See Kinsel v. Cain, 647 F.3d 265, 270 (5th Cir. 2011), cert. den., 132 S.Ct. 854 (2011) ("Under the AEDPA, we must presume the correctness of the state court's factual finding that A.M.'s recantation lacked credibility, recognizing that credibility determinations in particular are entitled to a strong presumption of correctness. Although Kinsel could have rebutted this presumption [by clear and convincing evidence], he has not succeeded in doing so.") (footnotes omitted); Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) ("It is reasonable to draw from this record the inference that the judge who heard the evidence determined that Willard's testimony on this issue was more credible than Weeks' . . . .  As noted above, this implicit factual finding is due the same highly differential [sic] presumption of correctness required by § 2254(e), which Weeks has failed to defeat by clear and convincing evidence.").

Petitioner has failed to rebut the presumed correctness of the state courts' credibility determination.  In fact, none of the reasons proferred by Petitioner for rejecting the state courts' credibility determinations are even persuasive.   It seems eminently reasonable for the state court to credit the statement of Petitioner's counsel at a side bar conference which was stenographically recorded and which was made during the trial and where the motive for counsel to lie concerning Petitioner not providing him with such character witnesses seems negligible. Furthermore, the state court's explicit rejection of testimony by Petitioner's mother at the PCRA hearing that she in fact presented names of character witnesses to trial counsel was also reasonable insofar as the PCRA court noted the mother's "obvious interest in seeing her son

freed." ECF No. 2-2 at 6.   Petitioner has not met his burden to convince this Court that the state

courts' credibility determinations are unreasonable.   The PCRA court found there was no error

on the part of counsel because counsel did not know of nor should he have known of names of

character witnesses given that Petitioner did not provide him any.   Having found no deficient

performance on the part of counsel, Petitioner's ineffectiveness claim necessarily fails.

### C. PETITIONER CLAIMS THAT THE CUMULATIVE EFFECT OF COUNSEL'S ALLEGED ERRORS PREJUDICED PETITIONER EVEN IF, THE ERRORS, CONSIDERED INDIVIDUALLY, DID NOT CAUSE PREJUDICE.

This brings us to Petitioner's third major issue.   Petitioner contends that even if this court

does not find that Petitioner was prejudiced by counsel's alleged failures when considered

individually under the first issue and under the second issue, when considered cumulatively, we

should find Petitioner was prejudiced.   ECF No. 2 at 71 ("Should this Honorable court find that

the prejudicial effect of either the first or second issues presented heretofore is not sufficient on

its own to satisfy the *Strickland* requirement, then Mr. Brown submits that the cumulative

prejudice sustained from trial counsel's  deficient performances as presented in the first and

second issues warrants a finding of prejudice.").   We are not persuaded.[8]

In order for a cumulative error analysis to even take place, there must be more than one

_____

[8]  In its Answer, the Respondents contend that this issue was not exhausted because it was not
presented to the state courts.  ECF No. 10 at 13.  Petitioner claims that his failure to raise this
issue of cumulative error should be excused because it would have been futile to present such a
claim given the Pennsylvania state courts generally refuse to consider cumulative error claims.
ECF No. 13 at 11 to 12.  Respondents appear to agree with this characterization of Pennsylvania
law.  ECF No. 10 at 31 n.6.   Notwithstanding any putative failure to exhaust this claim of
cumulative prejudice, this Court may deny the Petition even if the claim were unexhausted.   28
U.S.C. § 2254 (b)(2) ("An application for writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the
State.").

error to accumulate. See Steele v. Beard, 830 F.Supp.2d 49, 86 (W.D.Pa., 2011).[9]  Under the

state courts' analysis, Petitioner's trial counsel did not engage in any errors under the two claims

Petitioner brought.  Hence, there were no errors to even aggregate.  In the alternative, even if this

Court, were to find, contrary to the state courts' finding that trial counsel's performance was

deficient in failing to introduce the cumulative evidence under Petitioner's first claim, we do not

find that Petitioner's counsel was deficient under Petitioner's second claim in failing to adduce

character evidence because Petitioner himself failed to provide any names to counsel.

Accordingly, this issue does not merit relief as there are not multiple errors by trial counsel to

aggregate for purposes of performing a cumulative error analysis.[10]

Accordingly, because none of the issues merits relief, the Petition must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

We conclude that jurists of reason would not find the foregoing debatable.  Accordingly,

we deny a certificate of appealability.

---

[9]  As the Steele Court explained:

> In Berryman v. Morton, 100 F.3d 1089, 1097–1102 (3d Cir. 1996), the Third
> Circuit Court of Appeals found that, as to each error alleged by petitioner, counsel
> had been deficient under Strickland, and therefore considered the cumulative
> effect of these errors for purposes of deciding whether prejudice had been shown.
> In this case, with regard to Steele's guilt phase, the only instance in which Steele
> has arguably shown that counsel may have performed deficiently is his claim that
> counsel should have retained a defense expert in hair comparison analysis, and
> gathered support from available scientific literature, in order to keep out Agent
> Podolak's testimony, or at least be able to rebut his testimony adequately during
> cross-examination. Steele has failed to demonstrate that he was prejudiced by his
> counsel's alleged failures in this regard, and there are no other errors on the part of
> counsel to aggregate.

Id., at 86.

[10]  Any argument contained in the 78 page MOL or the 14 page Traverse  or any other filing  by
Petitioner which was not specifically addressed by the Court in the course of this opinion has
been considered and rejected as unpersuasive but not requiring comment.

BY THE COURT,


/s/Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Date:   October 23, 2012


cc:      All counsel of record via CM/ECF